PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

WARREN COLLINS,
　　　　　*Defendant-Appellant.*

No. 03-4966

Appeal from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, Chief District Judge.
(CR-02-102)

Argued: December 1, 2004

Decided: June 20, 2005

Before NIEMEYER and MICHAEL, Circuit Judges, and
Norman K. MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Moon wrote the opinion, in
which Judge Niemeyer and Judge Michael joined.

## COUNSEL

**ARGUED:** Sante E. Boninsegna, Jr., Pineville, West Virginia, for
Appellant. John Lanier File, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Beckley, West
Virginia, for Appellee. **ON BRIEF:** Kasey Warner, United States
Attorney, Beckley, West Virginia, for Appellee.

**OPINION**

MOON, District Judge:

A jury convicted Warren Collins of conspiracy to distribute cocaine base and possession of cocaine base with the intent to distribute. Collins appeals his convictions, arguing: (1) the district judge erred in denying his motion to suppress; (2) there was insufficient evidence to support his conviction of possession with the intent to distribute; (3) he cannot constitutionally be convicted of conspiracy when his sole co-conspirator James Scott was acquitted; and (4) the district judge erred by sentencing him as a career offender under the Federal Sentencing Guidelines. Finding no merit in Collins's arguments, we affirm his convictions. Further, although we find that the district court committed a plain error under *United States v. Booker*, 125 S. Ct. 738 (2005),[1] when it treated the Sentencing Guidelines as mandatory in calculating Collins's sentence, we determine that Collins has not met his burden of demonstrating that this error affected his substantial rights. Therefore, we affirm Collins's sentence.

On April 3, 2002, undercover officers of the Southern Regional Drug and Violent Crime Task Force were patrolling "The Hill," an area known for drug trafficking in Princeton, West Virginia. The officers noticed a parked vehicle occupied by two men. These two men were James Scott, sitting in the driver's seat of the parked vehicle, and Warren Collins, sitting in the passenger's seat.

As the officers drove by the parked vehicle in an unmarked Beretta, Scott put his arm out the window and motioned for the officers to come over. The officers pulled alongside the parked vehicle. Scott asked the officers, "what do you need?" One of the officers, Detective T. A. Bailey, testified at trial that he took this statement to mean that Scott was offering to sell drugs. The officers then stopped their vehicle. Bailey exited the Beretta and walked toward the driver's side of the parked vehicle. As he began talking with Scott, Bailey observed Collins throw a plastic baggie onto the passenger-side floorboard of the vehicle. Bailey then walked around to the passenger's side of the vehicle, ordered Collins out of the vehicle, and handcuffed him.

---

[1]Consolidated with *United States v. Fanfan*, 125 S. Ct. 738 (2005).

Detective Bailey then reached into the vehicle and picked up the baggie from the passenger-side floorboard. The baggie contained a chunk of tan material which appeared to Bailey, based on his training and experience, to be cocaine base. Bailey then arrested Collins. The tan material in the baggie later was determined to be 2.59 grams of cocaine base.

A grand jury charged Collins with possession of cocaine base with the intent to distribute and conspiracy to distribute cocaine base. The grand jury charged Scott only with conspiracy to distribute cocaine base. Prior to the trial, the district court denied Collins's motion to suppress the cocaine base found in the vehicle. Following the trial, a jury convicted Collins of both charges, but acquitted Scott of the conspiracy charge. The district judge sentenced Collins to 216 months of incarceration.

I.

Collins first argues that the district judge erred in denying his motion to suppress. Collins maintains that Officer Bailey seized him by ordering him out of the vehicle and immediately handcuffing him, and that this seizure and the subsequent search of the vehicle violated the Fourth Amendment because the officer lacked probable cause to do so.

When considering a motion to suppress on appeal, we review a district court's factual findings for clear error and its legal determinations *de novo*. *United States v. Perkins*, 363 F.3d 317, 320 (4th Cir. 2004). Because the district court denied the motion to suppress, we will view the evidence in the light most favorable to the government. *Id.*

We find that the seizure of Collins and the search of the vehicle did not violate the Fourth Amendment because Officer Bailey had probable cause to believe that a felony was being committed when he ordered Collins out of the vehicle and handcuffed him. *United States v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990). The officers, who had a combined twenty-seven years of experience as police officers and seven years of experience in narcotics, were patrolling an area known for drug trafficking when they noticed a vehicle occupied by two men

parked in front of an empty lot. The officers believed that Scott was offering to sell them drugs when he motioned them over and asked, "what do you need?" Officer Bailey's suspicions increased when he saw Collins throw a plastic baggie onto the floor of the vehicle. Bailey testified at trial that a plastic baggie is a common way to package cocaine in that area. Based on these facts, it was reasonable for Bailey to believe that drug trafficking, a felony, was taking place. Because Bailey had probable cause, he was justified in seizing Collins by ordering him out of the vehicle and handcuffing him. Officer Bailey also was justified by the automobile exception to search the vehicle in order to obtain the baggie from the floorboard, because he had probable cause to believe that the vehicle contained the evidence of a crime and exigent circumstances existed. *California v. Carney*, 471 U.S. 386, 390-91 (1985). Therefore, we conclude that the district judge was correct in denying Collins's motion to suppress.

## II.

Collins next argues that his conviction for possession with the intent to distribute should be reversed because there was insufficient evidence for a reasonable jury to find his guilt beyond a reasonable doubt. To convict a defendant of possession with the intent to distribute, the government must prove: (1) possession of a narcotic controlled substance; (2) knowledge of the possession; and (3) the intent to distribute. *United States v. Randall*, 171 F.3d 195, 209 (4th Cir. 1999). We have said that the intent to distribute can be inferred from a number of factors, including but not limited to: (1) the quantity of the drugs; (2) the packaging; (3) where the drugs are hidden; and (4) the amount of cash seized with the drugs. *United States v. Bell*, 954 F.2d 232, 235 (4th Cir. 1992); *United States v. Fisher*, 912 F.2d 728, 730 (4th Cir. 1990). Because none of these factors applies in this case, Collins argues that there was insufficient evidence of his intent to distribute the cocaine base.

However, when a defendant challenges the sufficiency of the evidence on appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Fisher*, 912 F.2d at 730. Applying this standard, we conclude that a rational trier of fact could have found

Collins guilty of possession of cocaine base with the intent to distribute.

The government presented evidence that two experienced narcotics officers encountered Collins and Scott in a parked vehicle in a high drug-trafficking area. The vehicle was parked in front of an empty lot. Scott motioned the officers over and asked them, "what do you need?" Detective Bailey testified that he took this statement to mean that Scott was offering to sell drugs. The government proved that the other man, Collins, had drugs in his possession. From this evidence, the jury could infer that the two men were acting in concert with the objective of selling drugs—Scott was offering to sell the drugs that Collins had in his possession.

Scott testified that he motioned the police officers over because he mistakenly thought they were his friends, and he said "what do you all want?" when he realized he did not know them. However, the jury was free to discredit his testimony because he was a convicted felon, because his testimony conflicted with that of other witnesses, and because of his obvious bias. The jury could therefore infer that Collins possessed the cocaine base with the intent to distribute it.

There is more evidence of the intent to distribute in this case than in *United States v. Fountain*, 993 F.2d 1136 (4th Cir. 1993), which Collins advances to support his position. In *Fountain*, we found there was insufficient evidence of possession with the intent to distribute when the police found the defendant standing around in a high drug-trafficking area with three separately packaged baggies of marijuana totaling 2.3 grams in his sock. *Fountain*, 993 F.2d at 1137-38. Here, the statement of Scott to the police officers provides evidence of the intent to distribute beyond mere evidence of possession of drugs in a high drug-trafficking area, which was all that was present in *Fountain*.

### III.

Collins also argues that we should overturn his conspiracy conviction because he cannot constitutionally be convicted of a conspiracy when his co-conspirator Scott was acquitted. Collins argues that because the same jury that convicted him acquitted his sole co-

conspirator of the conspiracy, the inconsistent verdicts cannot stand. The law is established on this point. In *United States v. Powell*, 469 U.S. 57, 65 (1984), the Supreme Court held that a defendant is not entitled to a new trial when the jury reaches an inconsistent verdict. In *United States v. Thomas*, 900 F.2d 37 (4th Cir. 1990), based on the holding in *Powell*, this Court declined to overturn a defendant's conspiracy conviction when the defendant's co-conspirator was acquitted of the conspiracy charge. *See Thomas*, 900 F.2d at 40 ("According to the Supreme Court, inconsistent verdicts should not necessarily be interpreted as a windfall to the Government at the defendant's expense."). Collins's case is indistinguishable from these two cases. Accordingly, we hold that Collins's conviction should not be reversed because his co-conspirator was acquitted.

## IV.

Collins next challenges the district court's sentencing calculation by arguing that the judge should not have applied the Sentencing Guidelines § 4B1.1 career offender enhancement[2] to him. At the time of his sentencing, Collins had two previous felony convictions—one for a crime of violence and one for a controlled substance offense. At Collins's sentencing, the judge applied the § 4B1.1 enhancement to him on account of these offenses.

Collins does not dispute that the § 4B1.1 enhancement otherwise would apply to him, but argues that his two previous offenses are related under the meaning of Guideline § 4A1.2 and therefore should have been treated as one offense for purposes of sentencing.[3] Collins

---

[2]Guideline § 4B1.1(a) provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

United States Sentencing Commission, Guidelines Manual § 4B1.1(a) (Nov. 2004) (hereinafter USSG).

[3]Guideline § 4A1.2(a)(2) provides that "Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." USSG § 4A1.2(a)(2).

argues that his prior offenses are related because they occurred in the same area and during the same general time frame, they were consolidated for plea and sentencing, and a judge ordered the sentences for both offenses to run concurrently. In addition, between the time of this trial and sentencing in the federal district court, Collins obtained a *nunc pro tunc* order from a state court judge consolidating the cases.[4] The text of the Sentencing Guidelines is instructive on this point. The commentary to Guideline § 4A1.2 states: "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest." USSG § 4A1.2, comment. (n. 3). Collins concedes that an intervening arrest separated the two prior offenses. Accordingly, the district judge properly found Collins to be a career offender under the Guidelines because the two offenses are not related for sentencing purposes.

Regarding Collins's sentence, we also must address whether this case implicates *United States v. Booker*, 125 S. Ct. 738 (2005), which Collins raised on appeal.[5] The district judge sentenced Collins with the understanding that the Federal Sentencing Guidelines were mandatory according to binding precedent at that time. *See United States v. Kinter*, 235 F.3d 192, 199-202 (4th Cir. 2000). Before imposing Collins's sentence, the judge made two post-verdict factual findings that potentially violate *Booker*.

First, as discussed *supra*, the judge found Collins to be a career criminal based on his prior convictions and applied the § 4B1.1 enhancement to him. This enhancement increased Collins's Guidelines offense level from a twenty to a thirty-two. J.A. 481. The *Apprendi* line of cases carves out an exception for enhancements based on the fact of a prior conviction. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

---

[4]The state court judge entered this order nine years after Collins was sentenced for the offenses.

[5]Before we heard arguments in this case, Collins filed a motion to allow the withdrawal of counsel, in part because of a disagreement over whether Collins's counsel should have raised issues pertaining to *Blakely v. Washington*, 124 S. Ct. 2531 (2004), in his appeal. We denied the motion to withdraw, but considered the *Blakely* issue as raised on appeal.

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Booker*, 125 S. Ct. at 756 (same, citing *Apprendi*); *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005)(same, citing *Apprendi* and *Booker*). However, in light of *Shepard v. United States*, 125 S. Ct. 1254 (2005), and *United States v. Washington*, 404 F.3d 834 (4th Cir. 2005), we must determine whether the judge's application of the career offender enhancement to Collins falls within the *Apprendi* "fact of a prior conviction" exception or whether it potentially violates the Sixth Amendment under *Booker*.

In *Shepard v. United States*, the Supreme Court held that a sentencing court cannot look beyond the charging document, the terms of a plea agreement, the plea colloquy, the statutory definition, or any explicit finding of the trial judge to which the defendant assented to determine a disputed fact *about* a prior conviction.[6] *See Shepard*, 125 S. Ct. at 1263 (stating that the sentencing judge's finding about the disputed fact of whether the defendant's prior conviction was for generic burglary is "too far removed from the conclusive significance of a prior judicial record" to fall within the *Apprendi* exception for prior convictions). This holding prompted us to consider in *United States v. Washington* whether the Sixth Amendment is violated when a district judge makes findings of fact regarding the circumstances of a defendant's prior convictions, and then relies on these findings to enhance the defendant's sentence. *Washington*, 404 F.3d at 838. This question implicated "the scope of the 'fact of a prior conviction' exception to the Sixth Amendment protections outlined in *Apprendi v. New Jersey*." *Id.* In *Washington*, the sentencing judge made the

---

[6]In *Shepard*, the question was whether the defendant's prior burglary conviction qualified as a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The ACCA mandates a 15-year minimum sentence for possession of a firearm after three prior convictions of "serious drug offenses" or "violent felonies." 18 U.S.C. § 924(e) (2000). The ACCA defines burglary as a violent felony only if it was committed in a building or enclosed space ("generic" burglary). The Court held that a sentencing court cannot look to police reports or complaint applications to determine whether a defendant's prior state burglary conviction was a generic burglary for purposes of the ACCA. *Shepard*, 125 S. Ct. at 1257.

determination, after fact-finding, that the defendant's prior conviction of breaking and entering into the offices of a drug and violent crime task force was a "crime of violence" for purposes of Federal Sentencing Guideline § 2K2.1(a).[7] *Washington*, 404 F.3d at 837. We found that the resulting enhancement of the defendant's sentence did not fall within the *Apprendi* "fact of a prior conviction" exception and thus violated the Sixth Amendment. *Id.* at 843. Similarly, in this case we must determine whether the district judge's finding that the career offender enhancement applied to Collins falls within the *Apprendi* "fact of a prior conviction" exception.

In order to conclude that the Sentencing Guidelines career offender enhancement applied to Collins, the judge first determined that Collins's prior convictions were either a "crime of violence" or a "controlled substance offense," as defined by Guideline § 4B1.1.[8]

---

[7]Sentencing Guideline § 2K2.1(a)(4) provides that a defendant's sentence will be enhanced to an offense level of twenty if the defendant has one prior felony conviction of a "crime of violence" or a "controlled substance offense." USSG § 2K2.1(a)(4). A "crime of violence" is defined as either a crime that has as an element the use, attempted use, or threatened use of physical force against the person of another, or a burglary of a dwelling, arson, extortion, a crime that involves the use of explosives, or a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(a). In *Washington*, the sentencing judge made the determination, after fact-finding, that breaking and entering into the offices of a drug and violent crime task force "involves conduct that presents a serious potential risk of physical injury to another." *Washington*, 404 F.3d at 837. In making this determination, the judge found by a preponderance of the evidence that "breaking and entering of a government-owned building to steal the goods and property of a drug and violent crime task force is conduct that, by its nature, presents a serious potential risk of physical injury to another." *Id.*

[8]Guideline § 4B1.1(a) provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a).

Collins's prior offenses were for possession of crack cocaine with the intent to deliver and malicious wounding. J.A. 483-84, ¶¶ 39, 41. It is undisputed that these crimes were either a "crime of violence" or a "controlled substance offense" as defined by § 4B1.1, and it was not necessary for the judge to make any findings about the circumstances of these convictions in order to reach this conclusion.[9] Next, the judge found that the two offenses were separated by an intervening arrest, and thus concluded that they were not related for the purposes of § 4B1.1.[10] At the sentencing hearing, Collins conceded that the two offenses were separated by an intervening arrest. *See* J.A. 436-37.[11]

---

[9]Guideline § 4B1.1 states that the terms "crime of violence" and "controlled substance offense" are defined in § 4B1.2. USSG § 4B1.1, comment. (n.1). Guideline § 4B1.2 defines a "crime of violence" as any offense that has as an element the "use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a)(1). The same guideline defines a "controlled substance offense" as an offense that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance" or the "possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b). Based on these definitions, it is clear that the judge could conclude that Collins's offense of malicious wounding was a "crime of violence" and that his offense of possession of cocaine base with the intent to distribute was a "controlled substance offense" within the meaning of § 4B1.1 *without* entering into any further fact finding.

[10]The Guidelines specify that an intervening arrest occurs when the defendant is arrested for the first offense prior to committing the second offense. USSG § 4A1.2, comment. (n.3).

[11]At the sentencing hearing, the court heard arguments on Collins's objection to being classified as a career offender. *See* J.A. 429-39. After the government attorney explained the sequence of events to the judge, which included the fact that there was an intervening arrest between the two prior offenses, the judge asked Collins's attorney whether he had any dispute about the timing of the events described by the government. J.A. 436-37. Collins's attorney replied, "[n]o, Your Honor." J.A. 437. The judge then asked Collins's attorney, "[i]f that's what happened, how do you get around the intervening arrest?" *Id.* Collins's attorney replied: "Well, I believe were this court to follow what the other courts have said, that we would not be able to." *Id.* It is clear from this colloquy that the attorney only was arguing a point of law, and not disputing any particular fact *about* the prior convictions within the meaning of *Shepard* and *Washington*.

Therefore, because there was no dispute regarding the fact that the offenses were separated by an intervening arrest, the judge did not need to enter into any fact finding regarding a disputed fact about a prior conviction within the meaning of *Washington* and *Shepard*. For this reason, we do not need to address whether this finding was "too far removed from the conclusive significance of a prior judicial record" to implicate the Sixth Amendment. *Shepard*, 125 S. Ct. at 1262; *Washington*, 404 F.3d at 842 (quoting *Shepard*). This case can thereby be distinguished from *Shepard* and *Washington*, and the judge's application of the career offender enhancement to Collins falls within the *Apprendi* exception. Accordingly, the judge's finding that the career offender enhancement applied to Collins does not violate the Sixth Amendment under *Booker*.

Second, the judge made a post-verdict finding as to the amount of drugs involved in Collins's convictions. At sentencing, the judge found that Collins was responsible for 2.59 grams of cocaine base, resulting in a base offense level of twenty. J.A. 481. However, the indictment did not charge any specific drug weight, and the jury made no finding as to drug weight. J.A. 14-15. The judge's finding potentially violates *Booker* because the judge found that Collins was responsible for a greater amount of drugs than he could have found based on the facts in the jury verdict alone. *See Booker*, 125 S. Ct. at 749; *Hughes*, 401 F.3d at 546.

---

In addition, in the district court's Memorandum of Sentencing Hearing and Report of Statement of Reasons, the court summarized the defendant's evidence in presenting his objection to being classified as a career offender in the presentence report. J.A. 522-23. Collins presented evidence that he was arrested on August 26, 1993, for a charge of malicious wounding that had occurred on August 17, 1993. At the time of this arrest, Collins was found to be in possession of crack cocaine. On October 14, 1993, Collins was again arrested, this time for possessing crack cocaine with the intent to deliver on August 26, 1993. J.A. 522. Thus, Collins's own evidence shows that his two offenses were separated by an intervening arrest, again confirming that the district judge did not have to resolve any disputed fact *about* a prior conviction in order to apply the career offender enhancement.

However, no *Booker* Sixth Amendment violation occurred here because Collins's sentence, with the addition of the career offender enhancement, still would have been the same even if the judge had not made the finding as to the drug weight. With the calculation of the career offender enhancement, Collins would have been sentenced at an offense level of thirty-two even if the judge had not made the drug weight finding and instead sentenced Collins at the lowest possible weight of cocaine base under the Guidelines. The judge found that Collins had a base offense level of twenty based on the drug weight finding of 2.59 grams. J.A. 481. The judge's finding that Collins was a career offender then increased his total offense level to a thirty-two. *Id.* If the judge had not made the finding as to the drug weight, Collins's base offense level would have been a twelve, which is the level corresponding to the lowest possible quantity of cocaine base under § 2D1.1 of the Guidelines.[12] Even if the judge had sentenced Collins at a base offense level of twelve, the application of the career offender enhancement still would have increased his *total* offense level to a thirty-two.[13] Accordingly, the judge's finding as to the drug weight did not violate the Sixth Amendment under *Booker*, because it did not increase Collins's sentence beyond the maximum that could have been imposed based on the facts in the jury verdict alone.

---

[12]USSG § 2D1.1(c) (Drug Quantity Table).

[13]Section 4B1.1(b) of the Sentencing Guidelines states that the career offender enhancement is to be calculated by looking to the statutory maximum of the base offense. USSG § 4B1.1(b). Collins was charged with violations of 21 U.S.C. § 846 and 21 U.S.C. § 841(a). J.A. 14-15. To determine the statutory maximums for both of these offenses, one must look to 21 U.S.C. § 841(b). Under 21 U.S.C. § 841(b), the maximum sentence for an offense involving less than five grams of cocaine base is twenty years and a $1,000,000 fine. *See* 21 U.S.C. § 841(b)(1)(C) (2000). Under the Guidelines, both an offense level of twelve, which corresponds to less than 250 milligrams of cocaine base, and an offense level of twenty, which corresponds to at least two grams but less than three grams of cocaine base, carry a statutory maximum of twenty years under 21 U.S.C. § 841(b). *See id.*; USSG § 2D1.1(c) (Drug Quantity Table). Under § 4B1.1, an offense with a statutory maximum of twenty years translates to a total offense level of thirty-two with the application of the career offender enhancement. USSG § 4B1.1(b) (2004). Therefore, Collins's offense level would have been calculated as a thirty-two with the career offender enhancement whether the judge had sentenced him with a base offense level of a twelve or a twenty.

Although Collins's sentence did not violate the Sixth Amendment under *Booker*, the district judge did sentence Collins with the understanding that the Sentencing Guidelines were mandatory, rather than advisory, as the *Booker* remedial scheme now dictates. The judge's treatment of the Guidelines as mandatory at Collins's sentencing gives rise to another type of sentencing error under *Booker*. This type of error is non-constitutional, and is distinct from the type of Sixth Amendment violations raised in *Booker*. *See Hughes*, 401 F.3d at 553.

Collins raised this error for the first time on appeal. Accordingly, we review Collins's sentence for plain error. *See United States v. White*, No. 04-4349, 2005 WL 949326, at *4 (4th Cir. Apr. 26, 2005); Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). To establish plain error, Collins must show that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights. *White*, 2005 WL 949326, at *4. Even if Collins meets these three steps, it remains within our discretion whether or not to notice the error. *Id.* We should only notice the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Olano*, 507 U.S. at 732).

An error occurred here when the district judge imposed a sentence under the former mandatory Guidelines regime rather than under the advisory regime outlined in *Booker*.[14] *Id.* at *5; *Hughes*, 401 F.3d at 553. We next determine whether this error is plain. Following our reasoning in *White*, this error is plain because "the law at the time of trial was settled and clearly contrary to the law at the time of appeal." *See White*, 2005 WL 949326, at *6 (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

The next step of the plain error analysis requires us to evaluate whether the error affected Collins's substantial rights or was prejudicial. *Id.* at *6; *Hughes*, 401 F.3d at 548. In accordance with our analysis in *White*, at this step, Collins has the burden of showing that "the error actually affected the outcome of the proceedings." *See White*, 2005 WL 949326, at *12 ("[T]he burden rests on the defendant, rather than the government, to prove that the error affected substantial

---

[14]We of course offer no criticism of the district judge, who followed the law and procedure in effect at the time of Collins's sentencing.

rights.") We conclude that Collins cannot meet his burden of demonstrating that he suffered actual prejudice from being sentenced under a mandatory sentencing regime. The record in this case does not demonstrate that the judge's treatment of the Guidelines as mandatory resulted in an increased sentence. *See id.* at \*13. Instead, the record in this case affirmatively shows that the judge's treatment of the Guidelines as mandatory *did not* result in an increased sentence.

The district judge sentenced Collins at the bottom of the Guidelines range, plus six months. The judge did so because he felt that a sentence at the bottom of the Guidelines was warranted because the Guidelines range was so high and because of the mitigating factors advanced by Collins's attorney. J.A. 446. The judge added six months to the sentence, however, because he felt that, "in view of [Collins's] lengthy criminal history, and the fact that [Collins has] totally shown a complete ability to disregard all efforts at rehabilitation, and [his] continuing bad attitude," it would be "an insult to the principles of the Guidelines" to sentence Collins at the very bottom of the Guidelines. J.A. 446-47. Thus, because the district judge sentenced Collins to a *greater* sentence than required by the Guidelines and gave compelling reasons for doing so, it appears that the judge would not have given Collins a sentence below the Guidelines range even if he had the discretion to do so. Although the judge felt that the mandatory nature of the Guidelines limited his discretion, this view did not stop him from imposing as light a sentence as he could have in this case.

In addition, the judge stated that he felt that the sentence imposed was "sufficient to satisfy all the statutory objectives of sentencing." J.A. 447. The judge also stated, "[i]n reaching my decision, I considered all the factors set out in 18 United States Code § 3553(a)." *Id.* Because the judge already has considered the § 3553(a) factors and the statutory objectives of sentencing, a resentencing conducted pursuant to the *Booker* remedial scheme is not likely to produce a different result. The fact that the judge already has considered the §3553(a) factors, which judges now must consider under the *Booker* remedial scheme, makes it even less likely that the mandatory nature of the Guidelines actually affected the outcome of Collins's sentencing proceedings.

Although the district court plainly erred under *Booker* by treating the Guidelines as mandatory in calculating Collins's sentence, Collins

cannot show that this error was prejudicial. Thus, we will not remand for resentencing under *Booker*.

For the reasons set forth above, we affirm Collins's convictions and sentence.

*AFFIRMED*